```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------X
Varsey Johnson,

                        Petitioner,                MEMORANDUM
                                                   & ORDER
        -against-

                                                   04 CV 3915 (SLT)
James Conway,

                        Respondent.
----------------------------------------------X
TOWNES, U.S.D.J.
```

Varsey Johnson petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Based on the written submissions of the parties and oral argument on May 20, 2005, and for the reasons set forth below, the petition is DENIED.

I.  Facts and Procedural History

Varsey Johnson ("Petitioner") was tried in Kings County on one count of second degree murder. Petitioner was charged with killing Taryn Holloway ("Holloway"), who was found dead in a hotel room on January 26, 1996. Petitioner was arrested shortly after the crime but was released due to insufficient evidence. Almost four years later, in November 1999, Petitioner was again arrested and charged based on a statement made by James Kirkland ("Kirkland"), the uncle of Petitioner's common law wife, to the district attorney indicating that Petitioner had confessed the crime to him in 1997.

At trial, Kirkland testified under subpoena regarding his 1997 conversation with Petitioner about the murder. Kirkland testified that he was driving Petitioner to the store and they were discussing Petitioner's problems with his common law wife, Gloria, when Petitioner

stated that he loved Gloria and admitted that he had even killed a girl for her. Petitioner told Kirkland that he had gone to a motel with a woman and a friend to use drugs and that while at the hotel the woman made sexual advances towards him. Petitioner stated that he rebuffed her advances, saying he was married, which caused the woman to become angry and to insult his wife. Petitioner stated that this made him angry and that he grabbed the woman's neck and snapped it. When he realized the woman was dead he left the hotel. Kirkland testified that when he had asked Petitioner how he got away with it, Petitioner said the police had not been able to prove anything because he had wiped his fingerprints from the room with a wet towel and had climbed out the window to avoid being seen.

During Kirkland's testimony it came to light that he had told the district attorney about Petitioner's confession only after the district attorney had informed him that her office would not be pursuing Kirkland's charges against Petitioner stemming from damage done to his car. Kirkland purportedly stated that Petitioner "gets away with everything" and told the prosecutor, "you probably let him get away with killing that girl too." Defense counsel cross-examined Kirkland at length concerning his motives in disclosing Petitioner's alleged confession, as well as other purported inconsistencies in his testimony.

Other testimony at trial established that Petitioner and the victim had been at the same nightclub on the night of the murder and had discussed going to a motel with a group of people. The two were last seen standing on a street corner together as Petitioner attempted to hail a cab. Approximately twenty minutes later, the front desk clerk at the Galaxy motel checked Holloway into the motel with an unidentified male matching Petitioner's general description, though the individual described by the desk clerk was somewhat taller than Petitioner and the clerk could not identify Petitioner as the man she had seen with the victim. The medical examiner testified

that Holloway died of manual strangulation, a process which likely took several minutes to complete.

In his summation, the prosecutor argued that the questions posed by defense counsel to Kirkland during cross-examination contained the sort of personal information that could only have come from someone close to him. The prosecutor argued that this person was Petitioner and that his knowledge of this sort of information indicated that Petitioner and Kirkland shared a close relationship and confided in one another. The prosecutor argued that Petitioner's confession was one such confidence. Defense counsel objected twice to this argument and the court overruled the objections. Following the jury charge, defense counsel moved for a mistrial based on the comments made by the prosecutor during his summation. The court denied the motion.

The jury convicted Petitioner of second degree murder. Prior to sentencing, defense counsel moved to set aside the verdict on the grounds of insufficient evidence of guilt and intent to support the conviction. The court denied the motion and sentenced Petitioner to twenty-five years to life in prison for the murder.

Petitioner appealed to the Appellate Division, Second Department, which held that the evidence presented at trial was legally sufficient to establish Petitioner's guilt beyond a reasonable doubt and that his remaining contention was unpreserved for appellate review and in any event without merit. *People v. Johnson*, 759 N.Y.S.2d 361 (App. Div. 2003). Leave to appeal to the Court of Appeals was denied without comment. *People v. Johnson*, 799 N.E.2d 628 (N.Y. 2003).

II.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was adjudicated on the merits in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir. 2001) (quoting *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999)). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring and writing for the majority in this part). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court

decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

"[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton*, 295 F.3d 270, 278 (2d Cir. 2002); *see also Yung v. Walker*, 341 F.3d 104 (2d Cir. 2002) (amended opinion) (district court's habeas decision that relied on precedent from the Court of Appeals is remanded for reconsideration in light of "the more general teachings" of Supreme Court decisions). The Court of Appeals for the Second Circuit has also indicated that habeas relief may be granted if a state court's decision was contrary to or an unreasonable application of "a reasonable extension" of Supreme Court jurisprudence. *Torres v. Berbary*, 340 F.3d 63, 72 (2d Cir. 2003). Determination of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

III.    Analysis of Claims

    A.    <u>Legal Sufficiency of the Evidence</u>

Petitioner argues that the evidence presented at trial was legally insufficient to establish his guilt beyond a reasonable doubt. This claim was rejected on the merits by the Appellate Division and leave to appeal to the New York Court of Appeals was denied. This claim is therefore exhausted.

Sufficiency of the evidence claims are governed by the standard elucidated by the

Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979). The Court held in *Jackson* that there is sufficient evidence to support a conviction where "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *see also Francis S. v. Stone*, 221 F.3d 100, 115 (2d Cir. 2000). In applying this standard, a federal habeas court must "view the evidence in the light most favorable to the prosecution." *Einaugler v. Supreme Court*, 109 F.3d 836, 839-40 (2d Cir. 1997) (quoting *Jackson*, 443 U.S. at 319).

There was no direct evidence against Petitioner in this case; the Prosecution relied instead on circumstantial evidence and on Kirkland's testimony that Petitioner confessed the crime to him one year after the fact. Petitioner argues that no rational juror could have credited Kirkland's account of his confession because Kirkland admitted that he was angry at Petitioner for damaging his car and because his account of the confession was not fully corroborated by the physical evidence and the testimony of other witnesses. However, defense counsel fully argued all of these points to the jury, who apparently elected nonetheless to credit Kirkland's testimony. This Court may not now second-guess the jury's credibility determinations or re-weigh the evidence that was evaluated by the jury at trial. *See United States v. Dhinsa*, 243 F.3d 635, 648 (noting that on federal habeas review a court "'may not substitute [its] own determinations of credibility or relative weight of the evidence for that of the jury'") (quoting *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000)); *United States v. Morrison*, 153 F.3d 34, 49 (2d Cir. 1998) ("We defer to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence.").

Petitioner points out that several circuits have held that reliance by jurors on testimony

which is "inherently incredible" or which would violate the laws of nature if believed may justify habeas relief. *See United States v. Griffin*, 194 F.3d 808, 817 (7th Cir. 1999) (testimony is incredible as a matter of law if "it would have been physically impossible for the witness to observe what he described, or it was impossible under the laws of nature for those events to have occurred at all") (internal quotation marks and citation omitted); *United States v. Steele*, 178 F.3d 1230, 1236 (11th Cir. 1999) ("[F]or testimony of a government witness to be incredible as a matter of law, it must be unbelievable on its face and must relate to facts that the witness physically could not have possibly observed or events that could not have occurred under the laws of nature.") (internal quotation marks and citation omitted); *United States v. Smith*, 131 F.3d 1392, 1399 (10th Cir. 1997) ("[W]e must resolve credibility issues in the jury's favor unless the testimony is 'inherently incredible.'") (quoting *Tapia v. Tansy*, 926 F.2d 1554, 1562 (10th Cir. 1991)).

The testimony in this case, however, does not fit into that category. While Kirkland's testimony that Petitioner confessed the murder to him to demonstrate that he loved his wife so much "he had killed a girl for her" may strain credulity, it cannot be said that the admission could not have occurred as Kirkland testified. Nor do the few arguable inconsistencies between Petitioner's admission, as testified to by Kirkland, and the physical evidence found at the crime scene make the testimony incredible as a matter of law. The majority of the circumstantial evidence presented at trial corroborated Kirkland's account of the admission, and the government presented the jury with an explanation for the parts that did not match exactly, which was essentially that Petitioner left out certain details of the crime, such as the prolonged nature of the manual strangulation and the clear implication that Petitioner had gone with the woman to the motel to engage in sexual relations, in order to make himself look better to Kirkland. There is

nothing inherently incredible about this explanation and the jury was entitled to believe it. Thus, it cannot be said that the jury relied on testimony that was incredible as a matter of law in voting to convict Petitioner.

Petitioner further argues that the Court has a special duty to assess the credibility of admission testimony such as that present in this case, relying on the holding in *Ceballos v. Artuz*, 2001 U.S. Dist. LEXIS 189, at *21 (E.D.N.Y. Jan. 5, 2001) (Block, J.). Petitioner misreads *Ceballos*, as that opinion does not articulate a heightened standard for analysis of admission testimony but merely applies the *Jackson* standard in asking whether the testimony was so incredible that no rational juror could have believed it. *Id.* at 21-22. Moreover, it is odd that Petitioner would rely on *Ceballos* in making his legal sufficiency argument, as in that case the court held that the confession, though testified to by a witness with questionable credibility, was sufficient to sustain the defendant's conviction, even though there were certain inconsistencies between the admission testimony and the circumstantial evidence of the crime and the testimony of other witnesses. If anything, *Ceballos* further emphasizes the high burden facing a petitioner who seeks to challenge his conviction by questioning the credibility of witnesses who testified against him at trial.

Finally, Petitioner argues that even if the evidence presented at trial was legally sufficient to show that he committed the crime, it was insufficient to prove that he had the intent necessary to support a second degree murder conviction. Petitioner did not present this argument to the state courts. The claim is, therefore, unexhausted. However, it would serve no purpose to send Petitioner back to state court to exhaust this claim because, as the claim pertains to issues that are apparent from the record, it should have been brought on his direct appeal and is now procedurally barred. *See* N.Y. Court Rules § 500.10(a); N.Y. Crim. Proc. L. § 440.10(2)(c); *see*

*also Washington v. James*, 996 F.2d 1442, 1447 (2d Cir. 1993) ("Because [petitioner] failed to raise his [unexhausted] claim in state court and no longer may do so, his claim is procedurally defaulted."); *Lewis v. Bennett*, 328 F. Supp. 2d 396, 404 (W.D.N.Y. 2004) (finding unexhausted claims procedurally barred where claim could have been brought on direct appeal). Therefore, Petitioner's unexhausted claims must be deemed exhausted in that "there are no state remedies...'available' to him." *Coleman v. Thompson*, 501 U.S. 722, 732 (1991); *Spence v. Superintendant*, 219 F.3d 162, 170 (2d Cir. 2000) ("[W]hen a claim is procedurally defaulted in state court by failure to abide by state procedural rules and no state remedies remain available to a defendant, his claim is deemed exhausted for purposes of a habeas application.").

When a claim in a federal habeas petition is procedurally barred by state law, it cannot be heard by a federal court "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. "[T]he existence of cause for default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the States' procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Where there is "no basis on [the] record for overlooking the procedural default" the barred claims are precluded from habeas review. *Lewis*, 328 F. Supp. 2d at 404; *see also Murray*, 477 U.S. at 489 (finding fatal to petitioner's procedurally barred claims his failure to prove or allege external impediments to his raising the issue on direct appeal). Petitioner has not alleged any cause for his failure to raise this claim on his direct appeal, nor has he alleged that he will suffer a fundamental miscarriage of justice if the Court fails to review it. Without such a showing, the Court cannot review his claim.

B.  The Government's Summation

Petitioner argues that comments made by the prosecutor in his summation violated his right to due process and deprived him of a fair trial. The contested portion of the prosecutor's summation is as follows:

> PROSECUTOR: But ladies and gentlemen, what was most important of all of those questions asked by [defense counsel], that assault on Mr. Kirkland's credibility, think about some of the personal questions he was asking. He knew about his driver's license. He knew about things in his personal life, about women he was dating. He knew about who owned his car, and the little bit about his finances and his credit history. I think we can all agree, ladies and gentlemen, that [defense counsel] knew some personal information about Mr. Kirkland. The kind of information that a stranger would not know. The kind of information that only somebody who was trusted, somebody who was only a close friend, somebody who is only in the confidence of Mr. Kirkland would know. I submit to you, it is the person who is sitting right next to [defense counsel].
> DEFENSE: Objection.
> COURT: Overruled, I will allow it.
> PROSECUTOR: Ladies and gentlemen, he found out this information, I submit to you, from the defendant. Because he found this out from the defendant, tells you what kind of relationship the defendant had with Mr. Kirkland. Mr. Kirkland shared things with this defendant. We know that he was trusted. Mr. Kirkland lived with him for a period of months. Lived with his wife, lived with his child. You don't just let anybody into your house. He was a trusted family friend. Trusted relative. The way that Mr. Kirkland confided in this defendant, told him some personal things about himself.
> DEFENSE: Objection.
> COURT: I will allow that. It is up to you, jurors, to decide the facts but I will allow counsel to put that forward.
> PROSECUTOR: Ladies and gentlemen what I submit to you is that it worked both ways. That this defendant also trusted Mr. Kirkland and this defendant would tell Mr. Kirkland things that he wanted to confide in Mr. Kirkland.

After the court read the jury charge, Petitioner moved for a mistrial on the grounds that the prosecutor had improperly commented on Kirkland's testimony and that his comments went beyond the bounds of the evidence that had been presented at trial. The judge denied the motion, holding that the prosecutor's argument was a fair commentary on the evidence.

On appeal, Petitioner argued that the summation contained two instances of misconduct: (1) the comments noted above regarding Kirkland's testimony and (2) other comments made by

the prosecutor allegedly mischaracterizing the testimony of Ernestine McKay, another prosecution witness at trial. Defense counsel did not object to the comments concerning McKay at trial. In upholding Petitioner's conviction, the Appellate Division held that Petitioner's "remaining contention," i.e., his prosecutorial misconduct claim, was unpreserved for appellate review and, alternatively, was without merit. *Johnson*, 759 N.Y.S.2d at 361. While the Appellate Division did not expressly state the basis for its finding of procedural default, the state court presumably relied on New York's contemporaneous objection rule, codified at N.Y. Crim Proc. Law § 470.05(2)[1], in finding Petitioner's claim unpreserved. Petitioner argues that this holding could not have been intended to encompass his argument regarding the Kirkland comments because defense counsel objected to those during the prosecutor's summation and later moved for a mistrial. However, New York law indicates that such actions were insufficient to preserve the issue for appeal. In *People v. Tonge*, 710 N.E.2d 653 (N.Y. 1999), the Court of Appeals held that the interjection of a general objection to a prosecutor's remark at summation, though timely made, is insufficient to permit appellate review of the issue, as "a party's failure to specify the basis for a general objection renders the argument unpreserved." *See also Thomas v. Fischer*, 2004 U.S. Dist. LEXIS 5641, at *29 (S.D.N.Y. Apr. 5, 2004) ("Under New York law, a

---

[1] Section 470.05(2) provides:

For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in response to a protest by a party, the court expressly decided the question raised on appeal. In addition, a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered.

party's failure to state the basis for a general objection is insufficient to preserve the issue on appeal."); *People v. Tevaha*, 644 N.E.2d 1342 (N.Y. 1994) (holding that where "defense counsel simply made a general objection when the testimony was proffered, and failed to advise the trial court that the present claimed error was the basis for his objection" the argument was unpreserved for appellate review because "the word 'objection' alone was insufficient to preserve the issue."); *People v. Vidal*, 257 N.E.2d 886, 889 (N.Y. 1970) ("A general objection, in the usual course, is to no avail when overruled if not followed by a specific objection directing the court, and the adversary, to the particular infirmity of the evidence."); *People v. Bratcher*, 737 N.Y.S.2d 451, 452-53 (App. Div. 2002) (holding that petitioner's failure to explain the basis for his objections to the prosecutor's comments during summation rendered his prosecutorial misconduct claim unpreserved for appellate review); *People v. Hall*, 682 N.Y.S.2d 842 (App. Div. 1999) ("By failing to object, or by making one-word generalized objections, defendant failed to preserve his present challenges to the People's summation.").

Similarly, defense counsel's motion for a mistrial, coming as it did after the close of summations and after the court had read the jury charge, was insufficient to preserve the prosecutorial misconduct issue for appeal. *See People v. Duvall*, 688 N.Y.S. 2d 142, 143 (App. Div. 1999) (holding that the defendant's "belated motion for a mistrial at the conclusion of summations was insufficient to preserve his remaining claims of prosecutorial misconduct during summation"); *People v. Bruen*, 523 N.Y.S.2d 883 (App. Div. 1988) (holding that a motion for a mistrial must be made at the time of the impropriety and that "a belated motion which does not give the trial court opportunity to remedy the error complained of will fail to preserve the issue"). Thus, the Appellate Division holding that Petitioner's prosecutorial misconduct claim was procedurally barred properly applied to the Kirkland comments.

Petitioner further argues that the Appellate Division's "bare statement" of lack of preservation cannot constitute an "independent and adequate" state ground precluding habeas review. This argument is unavailing. The Appellate Division's holding constitutes an independent state law ground because, while the court "did not specifically state the basis for its holding that the issue was not preserved, its terse statement that the issue was 'unpreserved' is sufficient to show that it was relying on a procedural bar." *Smith v. Artus*, 2004 U.S. Dist. LEXIS 6226, at *37 (S.D.N.Y. Apr. 14, 2004). A procedural bar is adequate if it is "based on a rule that is firmly established and regularly followed" by the New York courts. *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999). The contemporaneous objection rule set forth in C.P.L. § 470.05(2) is such a rule. *Id.* at 79 ("[W]e have observed and deferred to New York's consistent application of its contemporaneous objection rules"); *Bossett v. Walker*, 41 F.3d 825, 829 n.2 (2d Cir. 1994) (respecting New York state courts' application of the contemporaneous objection rule as an adequate bar to federal habeas relief).

Thus, the only question remaining is whether this case is one of the "exceptional cases in which exorbitant application of a generally sound rule renders the state court ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376 (2002). In determining whether this narrow exception applies, a court will consider "(1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had 'substantially complied' with the rule given the 'realities of trial,' and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest." *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003) (quoting *Lee*, 534

U.S. at 381-85).

With respect to the first factor, the Second Circuit has noted that the question of whether the trial court actually relied on the rule is less applicable in a case such as this one, as "the lack of a contemporaneous objection would not, almost by definition, be mentioned by the trial court." *Cotto*, 331 F.3d at 242. As to the question of whether perfect compliance with the rule would have changed the trial court's decision, it has been noted that while "the likely impact of a timely objection involves a certain degree of speculation...the trial court may well have come to a different conclusion" had it been presented with the basis for the objection and accompanying argument. *See id.* at 243. Petitioner did present the basis for his objection when he moved for a mistrial, but his motion came only after summations were complete and the jury charge had been given, at a point when the opportunity for the trial court to issue a curative instruction or to take any action, short of the drastic step of declaring a mistrial, had passed. Had Petitioner specifically objected to the prosecutor's statements when made in a way that would have given the "the trial court a clear opportunity to correct any error," the outcome may have been different. *Id.* Thus, this factor weighs in favor of finding the procedural bar adequate to prevent review.

The second factor also supports the adequacy of the contemporaneous objection rule to bar review under these circumstances since, as previously discussed above, New York courts have consistently held that a party must do more than issue a general objection to summation comments in order to preserve the issue for appeal.

In order to find that Petitioner substantially complied with the contemporaneous objection rule, there would have to be some evidence in the record that the trial court was aware of Petitioner's objection to the prosecutor's comments at the time they were made despite defense counsel's failure to articulate a basis for the objection. *See Cotto*, 331 F.3d at 245-47. In *Cotto*,

the defendant's failure to explicitly object to the trial court's ruling barring cross-examination was excused where previous objections and, indeed, an entire *Sirois* hearing on the very same issue, had already put the court on notice that defense counsel opposed any curtailment of cross-examination. *Id.* Similarly, in *Daley v. Artus*, 2003 U.S. Dist. LEXIS 23428, at *26-28 (E.D.N.Y. Dec. 31, 2003) (Gleeson, J.), the contemporaneous objection rule was deemed inadequate to preclude habeas review where defense counsel had specified the basis for his objection once and then proceeded to generally object to essentially identical comments, which were clearly erroneous, during the course of the testimony and summation. Here, by contrast, there is nothing in the record to indicate that Petitioner put the trial court on notice as to the basis for his objections to the prosecutor's comments, which were not so blatantly improper as the ones in *Daley*, until defense counsel made the belated motion for a mistrial. Thus, the final factor, like the first two, support the adequacy of the contemporaneous objection rule to bar habeas review of this issue.

Petitioner has not asserted any cause or prejudice that would excuse him from the effect of his procedural default. However, even if this Court were to review the claim on its merits it would find that the alternate holding by the Appellate Division that the claim lacked merit was not an unreasonable application of clearly established federal law. In *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974), the Supreme Court held that improper remarks made by a prosecutor during summation rise to the level of a constitutional violation only where they are so prejudicial as to render the defendant's trial fundamentally unfair. Considered in light of the trial as a whole, it cannot be said that the prosecutor's isolated comments in summation, even if improper, so infected the process as to violate Petitioner's due process rights to a fair trial, particularly in light of the repeated instructions by the trial court to the jurors that they were the exclusive

judges of the facts, that they were to rely solely on the evidence presented during trial, and that they need not accept the arguments made or conclusions drawn by counsel during summations.

IV. Conclusion

The petition for a writ of habeas corpus is denied. Since Petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue.

**SO ORDERED.**

/s/ Sandra L. Townes
SANDRA L. TOWNES
UNITED STATES DISTRICT JUDGE

Dated: Brooklyn, New York
May 20, 2005